

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| ERICK DRAKE CHARETTE, #215182 | § | |
| VS. | § | CIVIL ACTION NO. 4:10cv98 |
| TERRY BOX, SHERIFF OF COLLIN COUNTY | § | |

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Erick Drake Charette, an inmate currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. However, the operative events of which Plaintiff complains do not involve TDCJ-CID but occurred while he was incarcerated in the Collin County Detention Facility.

### I. BACKGROUND

The sole named Defendant in this action is Terry Box, the Sheriff of Collin County.[1] Between Plaintiff's original complaint (docket entry #1) and his purported amended complaint (docket entry #27),[2] he claims that access to his inmate trust fun account was denied while he was

---

[1] Plaintiff initially attempted to file an amended complaint on May 4, 2010 (docket entry #7), that would have added the State of Texas, Collin County and the City of McKinney as defendants. The filing was ordered stricken by the Court's Order dated June 17, 2010 (docket entry #13). No other defendants have ever been added.

[2] Plaintiff filed a motion for leave to file an amended complaint and a purported amended complaint together, apparently in response to the Court's Order of September 7, 2010

1

incarcerated in the Collin County Detention Facility. He contends he wanted access to funds to pay for books, correspondence courses and legal matters including making copies and paying filing fees. In the original complaint, he alleged that he had three civil lawsuits dismissed "because the Collin County Detention Facility will not release funds from my inmate account as instructed to do so by me." Complaint at 4. He claims that Sheriff Box was "personally involved" in denying him access to funds through his "gross negligence in managing subordinates" and "by failing to remedy a known wrong."

On these allegations, Plaintiff's original complaint sought "damages for the delay and dismissal of my lawsuits [in the amount of] $30,000." Complaint at 4. He superceded that in his amended complaint and now seeks "nominal damages to be determined by the Court and punitive damages to be awarded by the jury." He also seeks to be "reimbursed for filing fees." Amended Complaint at 1. He does not explain how he paid any such filing fees in the first place if he allegedly was denied access to his funds, nor what "reimbursement" of such payments means.

Defendant Box filed an Amended Answer addressing the allegations of the original and amended complaints together and raising his affirmative defenses, including, *inter alia*, qualified immunity and that Plaintiff had insufficient funds in his account to be released. He has also filed a Motion for Summary Judgment ("MSJ") (docket entry #29) asserting that (1) Plaintiff did not have

(docket entry #23), that "Plaintiff shall specify how and when Sheriff Terry Box was personally involved in the various failures to release funds." *Id*. The amended complaint only consists of a new Statement of Claim and a statement of the Relief Sought without addressing either "how [or] when" Defendant Box was personally involved in the alleged conduct. Everything else is consistent with his original complaint. The new information in the purported amended complaint is brief and complements the original complaint without making any substantive changes, except in the nature of the relief sought. Defendant Box has already filed an Amended Answer (docket entry #28) addressing the allegations as stated in the amended complaint. The Court will consider the original and amended complaints together and refer to them as the Amended Complaint.

adequate funds in his inmate trust account to pay for any Court ordered filing fees; (2) Defendant Box is entitled to qualified immunity; and (3) Defendant Box is not liable in his supervisory capacity and had no personal involvement in any of Plaintiff's allegations. MSJ at 9-12. In support of the MSJ, Defendant Box submits his own affidavit (the "Box Affidavit") and the affidavit of Captain Jim Moody (the "Moody Affidavit"), along with exhibits to the Moody Affidavit. He also refers to certain admissions made in Plaintiff's operative complaints and in the pleadings, orders and other documents in this action. He also submits 55 individual Statements of Material Fact ("SMF") pursuant to Eastern District of Texas Local Rule 56(a).

Plaintiff filed a response in opposition(the "Opposition" or Opp.") (docket entry #37) 159 days after Defendant Box filed his MSJ. Defendant Box moved to strike the opposition as untimely pursuant to E.D. Tex. L.R. CV-7(c) (opposition briefs to be filed within 14 days). However, he also filed a reply brief (the "Reply") (docket entry #41). In the interests of justice, the Court will consider Plaintiff's opposition.

## II.    STANDARD ON SUMMARY JUDGMENT

Rule 56(a), Fed. R. Civ. P., provides that the Court may only grant a motion for summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (quoting Fed.R.Civ.P. 56(a)). The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265

(1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id*. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id*.

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little*, 37 F.3d at 1075. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson*, 477 U.S. at 247-248. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When the moving party has carried its burden under Rule 56(c),[3] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).

Furthermore, in that this is a civil rights claim pursuant to 42 U.S.C. § 1983, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

### III. DISCUSSION AND ANALYSIS

As an initial matter, the Court notes that Plaintiff has not identified any particular constitutional or federal law violation with regard to his claim. The Court will assume, *arguendo*, that his allegations sound under, for example, due process.

The Court will address Defendant Box's summary judgment issues in the order they are raised, except that it will consider his claim of qualified immunity last.

---

[3] The predecessor to the current Rule 56(a).

### A. Plaintiff's Insufficient Funds

Defendant Box' primary assertion is that at all times pertinent to this lawsuit, Plaintiff simply did not have funds, or sufficient funds, in his inmate trust fund account to pay for the charges Plaintiff requested. This is akin to the situation where a bank customer wishes to write a check on an account in which he has no money, or less money than the amount of the desired check, and the bank's failure to produce money that is not in the account.

Plaintiff originally asserted that he "had three civil lawsuits dismissed because the Collin County Detention Facility will not release funds from my inmate account . . . ." Complaint at 4. As Defendant Box avers in the MSJ, Plaintiff has filed numerous lawsuits in the Eastern District of Texas. *See* SMF #9. Two were voluntarily dismissed (case nos. 4:10cv205, 3:40cv203) (SMF #10); his petition for habeas corpus was dismissed for failure to exhaust state remedies, not due to failure to pay a filing fee (case no. 4:10cv452) (SMF #11). Plaintiff does not dispute these material facts. *See* Opp. at 3-4. Instead, he merely states:

> The Plaintiff has filed several other cases with the Eastern District of Texas. All have been dismissed without prejudice and have been dismissed for various reasons including the fact that Plaintiff is inexperienced in the law and is still learning the appropriate actions to be taken throughout these lawsuits.

*See* Opp. at 3, ¶ 9. With regard to his habeas case, Plaintiff claims in his opposition that:

> The habeas case was heard because the Plaintiff wrote the Court and explained that he could not get the Detention Facility to release the $5.00 filing (an amount of money available to the Plaintiff frequently during his two and one-half year incarceration in the Detention Facility) fee and asked for emergency exception.

*See* Opp. at 4, ¶ 11. However, Defendant Box' summary judgment evidence explicitly shows that when Plaintiff requested the $5.00 sum for case no. 4:09cv452, the habeas case cited above, on May 29, 2010, he was informed in writing that "You only have [forty-nine cents] on your account." *See*

6

Moody Affidavit at Ex. B, p.9. This in no way imputes any failure on the part of Defendant Box (or anyone else at the Collin County Detention Facility, for that matter) with regard to disbursing amounts requested from Plaintiff's inmate trust account.

As for lawsuits dismissed for failure to pay filing fees, there have actually been four: case nos. 4:10cv149, 4:09cv376, 4:09cv378 and 4:09cv379. *See* SMF #12. Plaintiff's only response to this statement of material fact is to refer back to his response in paragraph number 9, quoted above.

Defendant Box further asserts that the Eastern District of Texas issued orders in the various cases imposing initial partial filing fees with specific fee payment deadlines. *See* SMF #13, 14. These deadlines were in December 2009 and June 2010. SMF #14. Plaintiff does not dispute these statements. *See* Opp. at 4. Defendant Box further shows that at the times of Plaintiff's various lawsuits, he did not have adequate funds in his inmate trust fund account to pay these court ordered fees. *See* SMF #15; Moody Affidavit at ¶¶ 4-8.[4]

At Exhibit A to the Moody Affidavit, Defendant Box submits an "Individual Inmate Balance History Report - Detailed" showing the amounts available in Plaintiff's inmate trust fund account from September 30, 2009 to June 11, 2010, the date it was printed. It shows that over that period of time, there was a sum total of $422.77 added to Plaintiff's account from unidentified sources and a total of $422.28 in expenditures from his account. *See* Moody Affidavit, Ex. A at 1-3 (totals available at p.3). The expenditures are for cart charges or medical charges. *Id*. Captain Moody explains that a "cart charge" is the purchase of commissary items. *See* Ex. A at 3, ¶ 6. At Exhibit B to the Moody Affidavit, Defendant Box submits two specific form requests from Plaintiff for

---

[4] The Moody Affidavit has two paragraphs numbered "7." The Court will refer to the second such paragraph, on p.4 of the affidavit, as paragraph 8.

disbursements from his inmate trust fund account for the payment of court fees. One is the response to Plaintiff's request for a $5.00 payment for his habeas case filing fee, cited above. *See* Moody Affidavit, Ex. B at 9. The other is a request for $12.74 for case no. 4:10cv98, the instant case. *See id*. at 8. The response was, "Mr. Charette, You spent $40.66 on the commissary cart from 5-3-10 thru 5-4-10. Because of these transactions, you do not have the funds to cover this transaction," signed May 14, 2010. *Id*.

In any event, Plaintiff has submitted no competent summary judgment evidence to dispute Defendant Box' statements of material fact or evidence. He only states that he "had available funds for the listed causes at various times other than those listed at item 14." *See* Opp. at 4, ¶ 15. Such a conclusory statement, unsupported by any evidence, is insufficient to show a genuine issue for trial. *Stults*, 76 F.3d at 655. In fact, this conclusory statement is belied by the summary judgment evidence at Exhibit A of the Moody Affidavit, which adequately shows that whenever Plaintiff had a positive balance in his inmate trust fund account, it was almost immediately expended for his commissary purchases.

Defendant Box therefore has shown that Plaintiff did not have an adequate balance in his account to pay for non-commissary or medical-related disbursements. Plaintiff has submitted no evidence whatsoever to counter this evidence. Therefore, Defendant Box is entitled to summary judgment on this issue.

      **B.**      **Supervisory Liability Under *Respondeat Superior***

Defendant Box next contends that he is not liable in his supervisory capacity and that he had no personal involvement in any conduct with regard to the allegations of Plaintiff's lawsuit. Plaintiff has asserted that:

> Defendant Sheriff Terry Box is personally involved in his Constitutional wrong through gross negligence in managing subordinates who have caused this violation. Defendant Sheriff Terry Box is also personally involved by failing to remedy a known wrong.

Amended Complaint at Statement of Claim. Each of the allegations that Defendant Box is liable for "managing subordinates" and for "failing to remedy a known wrong" implicate an assignment of liability for his actions in a supervisory capacity. However, such liability does not lie in a § 1983 claim.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Nothing in any allegation in Plaintiff's combined complaints even vaguely suggests that Defendant Box participated in the alleged acts of misconduct. He was sued simply because of his supervisory role. However, the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). There, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

The United States Court of Appeals for the Fifth Circuit has not yet interpreted this holding of *Iqbal*. Nonetheless, under existing Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither of these two conditions contradict *Iqbal* but are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting.

Here, Plaintiff's allegations do not satisfy either condition. Defendant Box can be held liable only to the extent that he personally engaged in misconduct. *See Johnson v. Thaler*, 2011 WL 2433623, at *3 (E.D. Tex. May 18, 2011). He has shown that he does not personally participate in management of or disbursement of funds from inmate trust accounts. *See* SMF 41-43; Box Affidavit at ¶ 4 (Defendant Box "do[es] not participate in the details concerning the handling of inmate trust fund accounts . . . ."). Plaintiff has submitted nothing whatsoever to contradict this competent summary judgment evidence and, in fact, has explicitly stated he has "[n]o response" to either the pertinent Statements of Material Fact or the Box Affidavit. *See* Opp. at 6 ("38-55. No response."). Despite Plaintiff's allegation that he failed to manage his subordinates and was "personally involved by failing to remedy a known wrong," all Plaintiff has alleged is that he wrote complaints or grievances. However, the sole copy of an inmate request for funds that Plaintiff attached to his amended complaint is not even addressed to Defendant Box, but was replied to by B. Seals in September 2010. This is inadequate to overcome Defendant Box' summary judgment evidence.

Therefore, Defendant Box is entitled to summary judgment on this issue.

### C. Qualified Immunity

Defendant Box ultimately asserts that he is entitled to qualified immunity from Plaintiff's claims. He initially raised this defense in his original answer, *see* docket entry #19, and in his amended answer, *see* docket entry #28.

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The Supreme Court held that courts are initially required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id*. at 201. Second, if the Plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. With respect to the second step, the Fifth Circuit has held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232, 123 S. Ct. 1355, 155 L. Ed. 2d 196 (2003).

The Supreme Court recently revisited *Saucier v. Katz* in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L. Ed. 2d 565 (2009). The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id*. at 234. The Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The Supreme Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id*. at 236-37. It was further noted that courts are free to follow the *Saucier* procedure, but the decision "simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 242. The Supreme Court went on to discuss the facts of the case and found that the defendants were entitled to qualified immunity because the officers' conduct did not violate clearly established law. *Id*. at 244.

Qualified immunity is appropriate in this case. The Court has found no constitutional violations here in Plaintiff's thin allegations. "Thus, the evidence does not show that the specific actions of these deputy Defendants violated any clearly established constitutional rights of Plaintiffs." *Collins v. Ainsworth*, 382 F.3d 529, 541 (5th Cir. 2004). Therefore, the Defendants' conduct cannot have violated such a right and qualified immunity is appropriate under the first prong. *Saucier*, 533 U.S. at 201. Although the Court need not reach the second prong, it observes that Plaintiff's allegations simply do not show that Defendant Box' conduct was other than

12

objectively reasonable at any time.

Therefore, Defendant Box is entitled to qualified immunity as well as on the substantive issues raised above.

For all of the reasons stated herein, there is no genuine dispute as to any material fact, Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248, and Defendant is entitled to summary judgment as a matter of law. Therefore, Defendant's motion for summary judgment should be **GRANTED** and final judgment rendered in his favor, and against Plaintiff.

The Court also observes that Plaintiff: (1) has not stated any actual injury to himself with regard to any of his claims, as is required for a complaint under 42 U.S.C. § 1983; (2) has proffered arguments that are merely conclusory and do not plead the elements of any claim; and, in particular, (3) failed to file an amended complaint addressing Defendant Box' conduct with the particularity required in the Court's Order of September 7, 2010. These facts show that Plaintiff's complaint was frivolous pursuant to 28 U.S.C. § 1915A. *See Williams*, 2009 WL 1936088, at *1-2 (failure to show actual injury was frivolous); *Magee v. Crowe*, 2010 WL 1751575, at *11 (E.D. La. Apr. 1, 2010) (conclusory claim was frivolous); *Gaines*, 2010 WL 1063380, at *5 (claims not pleaded with sufficient particularity in Rule 7(a) reply dismissed as frivolous). Therefore, in addition to a recommendation to enter judgment in favor of Defendants, the Court also recommends dismissal of Plaintiff's claims as frivolous in accordance with 28 U.S.C. § 1915A(b)(1).

## IV. RECOMMENDATION

It is therefore recommended that Defendant Box' Motion for Summary Judgment (docket entry #29) be **GRANTED** and final judgment rendered in his favor and against Plaintiff. It is further recommended in addition that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as

frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 23rd day of August, 2011.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE